THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STANLEY BEAL, Appellant.

Second Department, May 16, 1977

*William E. Hellerstein* and *William J. Gallagher (Robert Bergen* of counsel), for appellant.

*John J. Santucci, District Attorney (William Schrager* of counsel), for respondent.

O'CONNOR, J. The primary question presented on this appeal is whether Criminal Term's refusal to adjourn the suppression hearing in order to allow the defense an opportunity to obtain a copy of the Grand Jury testimony of the lone witness, and to require that witness to produce a UF-61 report, constituted reversible error. Under the circumstances of this case such refusal, although error, had, at best, a minimal impact on the determination made at the suppression hearing; the absence of any real prejudice to defendant's rights leads to a conclusion that the judgment of conviction should be affirmed.

On May 9, 1973 an indictment was filed charging the defendant with the crime of possession of weapons and dangerous instruments and appliances, as a felony. Patrolman

Albert Farrell was the only witness at the suppression hearing conducted on June 14, 1973. He testified that on March 24, 1973, at approximately 5:00 A.M., he received a radio message alerting him to a "man with a gun, at *South* Conduit and Farmers, in a gas station, see Mr. Brown." Farrell, who as a police officer had patrolled the area for nine years, knew that a "Mr. Brown" owned or operated a gas station at *North* and *not South* Conduit. Parenthetically, it should be noted that North and South Conduit are merely the contiguous service roads of the Belt Parkway and that North Conduit and Farmers are directly across the boulevard from South Conduit and Farmers. Secure in this knowledge, Farrell proceeded immediately to *North* Conduit and Farmers, taking less than two minutes to reach his destination. He was there informed by Brown that a Black male had attempted to gain entry into Brown's closed station on the pretense of purchasing cigarettes. Brown refused to unlock his door to this unwelcome intruder, who threateningly displayed a black revolver. At that point Brown levelled a shotgun at his persistent visitor, who suddenly lost all craving for nicotine and fled across the parkway toward South Conduit and Farmers Boulevard. Brown described his visitor as a Black male, 22 to 25 years of age, approximately five feet and nine inches tall, and wearing a black leather jacket. Incidentally, the conversation between Farrell and Brown lasted for less than one minute.

Farrell likewise crossed the parkway to the gas station located at the opposite corner of South Conduit and Farmers; there he saw a patrol car and observed its occupants conversing with a station attendant. Except for the patrolmen and the station attendants, the only other person in the immediate vicinity was a Black male, standing to the rear of the patrol car, who closely fit the description obtained from Brown but a few minutes before. Farrell's partner drew his gun and Farrell approached the suspect from the rear with his hand on his gun. Without a word, Farrell frisked the suspect and felt two lumps, one in his right rear pocket and another under his belt. He removed a .38 caliber revolver from under the belt and a knife from the pocket. Defendant was then arrested.

Defense counsel, with the goal of conducting a thorough cross-examination of Farrell, requested Farrell's Grand Jury testimony and his UF-61 report. The Grand Jury minutes, however, were in the process of being transcribed and Farrell had failed to bring the UF-61. Criminal Term refused defense

counsel's request for an adjournment to obtain the missing documents and the hearing proceeded. On cross-examination defense counsel made extensive and effective use of Farrell's preliminary hearing testimony, his memo book, and his arrest report. For instance, defense counsel made excellent use of the hearing minutes as he sought to impeach Farrell's credibility on the subject of the frisk. Although Farrell claimed that he initially frisked defendant, the following appeared in the preliminary hearing minutes:

"Q. And then what did you do?

"A. I immediately tossed him.

"Q. Immediately searched him?

"A. From behind."

Defense counsel fully explored the meaning of the word "tossed" and vainly sought a concession from Farrell that he had in fact subjected defendant to more than a frisk. Farrell however insisted that the terms "tossed" and "frisked" were synonymous.

Upon the conclusion of the hearing the motion to suppress was denied. Defendant subsequently entered a guilty plea to the crime of attempted possession of weapons, etc., as a felony, admitting in the process that the gun had been discovered as the result of a "police officer feeling your body."

Defendant now urges that the failure to provide him with the Grand Jury minutes and the UF-61 report during the cross-examination of Farrell was reversible error. Clearly it was error, and no valid reason existed to refuse to adjourn the suppression hearing in order to allow the defense an opportunity to obtain the requested materials. As was stated in *People v Rosario* (9 NY2d 286, 289): "a right sense of justice entitles the defense to examine a witness' prior statement, whether or not it varies from his testimony on the stand." Justice is never to be sacrificed upon the altar of speed under any circumstances. Yet this truism does not terminate the inquiry but rather initiates it, for as this court recently noted in *People v Pinion* (56 AD2d 664), the right to *Rosario* materials is "bottomed upon 'policy considerations' and 'a right sense of justice' *(People v Rosario,* 9 NY2d 286, 289) * * * [such rights] have in no way been predicated upon 'a fundamental constitutional right' to such material." Here the requested materials were not withheld as a result of the prosecution's bad faith, but simply because of a transcription problem and a

clerical lapse by Officer Farrell. The threshold question, therefore, is whether any reasonable reading of the missing items provides a basis for concluding that the defendant was unduly prejudiced.

The record is barren of any facts indicating that the UF-61 report would have helped the defense's cross-examination of Farrell; it is to be noted that Farrell's memo book and the relevant arrest record were produced and that extensive cross-examination ensued thereon.

Let us now consider the failure of the People to produce the Grand Jury minutes, which clearly recite that Farrell testified that he proceeded to *South* Conduit upon receiving the radio message and that he failed to mention that he first went to *North* Conduit. This was consistent with his preliminary hearing testimony, wherein he testified that after receiving the radio message he proceeded to South Conduit. Despite a vigorous cross-examination, Farrell steadfastly maintained that he simply failed to say that he *first* stopped at North Conduit. As already noted, his explanation for going to North Conduit first was because he *knew* that Brown was located there. Two thoughts are here pertinent: (1) in this context, the Grand Jury minutes clearly would have been but cumulative in effect; and (2) it is equally clear that Farrell's testimony is not at all inconsistent or contradictory, but at most failed to fully set forth the entire chronological order of events. The possible effect of this kind of testimony upon the trier of the facts is highly doubtful, to say the least.

Farrell also testified before the Grand Jury that when he approached the defendant he removed a loaded revolver from the defendant's waistband. This ambiguous testimony may have provided a source of inquiry into Farrell's credibility on the subject of whether he had in fact frisked defendant before removing the weapon from his waistband. As previously discussed, however, the ambiguous testimony at the preliminary hearing, as to whether Farrell had first "tossed" defendant, or had immediately searched him from behind, became a subject of thorough inquiry at the suppression hearing. It is then proper to conclude, as already noted, that the value of the Grand Jury minutes was merely in their cumulative effect.

The purpose of a preliminary hearing on a felony complaint is to establish reasonable cause to believe that a defendant has committed a felony (CPL 180.60). A Grand Jury determines whether a prima facie case has been made out and

whether there is reasonable cause to believe that the defendant has committed the offense charged (CPL 190.65). When a police officer testifies at a preliminary hearing his testimony is often presented in capsulized form. This is noted here simply to place the issue in a realistic and a proper context. A defendant at a suppression hearing is certainly entitled to the minutes of any hearing at which a witness against him has previously testified. Such minutes can serve as a valuable source for cross-examination purposes, and an astute attorney can often discover actual inconsistencies in what might have appeared to be the most innocuous testimony. It is equally true that skilled and persistent counsel ofttimes can conjure up apparent inconsistencies because of the capsulized nature of the testimony when in fact no inconsistency exists. The latter situation is the one which is present here.

We repeat again, it was inexcusable error to fail to provide defendant with the requested documents, but the *Rosario* doctinre is not so rigid as to mandate a reversal in every instance where the materials are not furnished. The basic fairness which requires the turning over of a witness' prior statements is not violated when there is a good faith failure to provide a defendant with material which would have proven to be either cumulative or irrelevant to the issue at hand. We should not ignore the fact that the leading case of *People v Rosario (supra)* terminated in the affirmance of a first degree murder conviction. As was there stated (9 NY2d 286, 291): "And, of the utmost significance, examination of the prior statements discloses that the few variances contained in them were of a most inconsequential character." That same element of inconsequentiality is present under these circumstances.

The propriety of the search itself is not challenged, so it is only briefly noted that Officer Farrell, armed with a description of the defendant's sex, race, age, height and attire from a named source with whom he was already acquainted, acted properly when he spotted the defendant. The defendant was in the area to which he had fled after facing Brown's shotgun, and there was reason to believe he was armed and dangerous. The limited police action of conducting an immediate frisk of defendant was both justified in its inception and reasonably related in scope to the circumstances which rendered its initiation permissible (see *People v De Bour,* 40 NY2d 210, 215).

It is also noted that the Justice presiding at Criminal Term

did not commit error by failing to disqualify himself. Although it is evident from the record that the request for a disqualification brought on an overly sensitive reaction, this, by itself, fails to establish that there was any prejudice or prejudgment displayed in the consideration of the suppression motion.

Accordingly, the judgment and order should be affirmed.

TITONE, J. (dissenting). The majority opinion concedes that it was inexcusable error for Criminal Term and the District Attorney to fail to provide defendant *inter alia* with the Grand Jury minutes of Farrell's testimony. However, it then denigrates such failure with a bromide that "[t]his [Farrell's Grand Jury testimony] was consistent with his preliminary hearing testimony, wherein he testified that after receiving the radio message he proceeded to *South* Conduit". What the majority fails to perceive in so rationalizing, is that the very consistency between Farrell's preliminary hearing testimony and Grand Jury testimony *renders doubly suspect* his subsequent inconsistent sworn testimony at the suppression hearing wherein he stated that he first went to North Conduit after receiving the radio call.

Moreover, it is equally untenable to slough off such failure on the mistaken theory that the Grand Jury minutes were "cumulative in effect" with the preliminary hearing minutes. The doctrine of "cumulative evidence" clearly has no application in this instance. "Cumulative evidence" has been defined as additional evidence of the same kind tending to prove the same point already made. However, evidence of other or different circumstances *tending to establish or disprove the same fact* is not cumulative (32A CJS, Evidence, § 1016). In the matter at bar, the testimony of the arresting officer that he proceeded first to South Conduit was elicited on two different occasions at two separate forums. Both statements, when considered in tandem, cast serious doubt on the subsequent inconsistent statement elicited at the suppression hearing (cf. *People v Johnson,* 259 App Div 921). In sum, to deny defendant's attorney an opportunity to use such double-barrelled ammunition on cross-examination was extremely prejudicial and manifestly deprived defendant of a full and fair hearing.

The majority opinion further disparages the importance of defendant not having the Grand Jury minutes on cross-examination by observing that Farrell, at the suppression hearing, testified that he simply "failed to say", on the two earlier

occasions, that he first went to North Conduit. According to the majority, his earlier dual testimony was not inconsistent or contradictory with the subsequent suppression hearing testimony, but was, at most, a failure "to fully set forth the entire chronological order of events." Yet this dual failure, which could not be weighed by the trier of the facts because the defense attorney was barred from exploiting both statements on cross-examination, strikes at the very core of Farrell's suppression hearing testimony.

It is manifest that Farrell's credibility was a crucial issue at the suppression hearing. His testimony at the preliminary hearing, and before the Grand Jury, as contrasted with his suppression hearing testimony, strongly indicates that he and his partner drove directly to South Conduit and Farmers Boulevard in response to the radio call about "a man with a gun". If such was the case, the frisking or tossing of defendant at South Conduit solely on the basis of the radio run was illegal, since there would have been no legitimate reason to suspect that defendant was carrying a gun (see *People v La Pene,* 40 NY2d 210, 221-226).

Thus, defendant, for purposes of cross-examination, had a right to examine *any and all* prior statements made by Farrell regarding his arrest (see *People v Gilligan,* 39 NY2d 769), and questions of prejudice or harmless error are irrelevant (see *People v Peacock,* 31 NY2d 907).

Accordingly, I dissent, and vote to reverse the judgment and order and to remand the case to Criminal Term for a *de novo* suppression hearing before another Justice.

RABIN, J. P., and HAWKINS, J., concur with O'CONNOR, J.; TITONE, J., dissents and votes to reverse the judgment and order and to remand the case to Criminal Term for a *de novo* suppression hearing, before a different Justice, with an opinion, in which SHAPIRO, J., concurs.

Judgment of the Supreme Court, Queens County, rendered August 7, 1973, and order of the same court, dated June 14, 1973, affirmed.