(May 24, 1988)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEAN SIMONDS, Appellant.

At approximately 6:00 A.M., on November 8, 1984, in the vicinity of 686 Rosewood Avenue, in Bronx County, the police found the lifeless body of Mr. Phillip Sena (Mr. Sena) lying in a pool of blood. Thereafter, an autopsy indicated the cause of death to be a gunshot wound in the left side of Mr. Sena's face, and, from his body the Medical Examiner recovered a .44 caliber bullet. In the opinion of a ballistics expert, the victim had been shot at close range.

Since police examination of Mr. Sena's body indicated he was wearing a silver Seiko watch, and, in his pockets were $40 in United States currency, as well as a wallet, which con-

tained numerous credit cards, they concluded robbery had probably not been the motive for the slaying.

Thereafter, during the course of an unrelated arson investigation, allegedly involving a Mr. Anthony Tarantino, the police came into contact with Mr. Gerald Moore (Mr. Moore), who was alleged to have information about the murder of Mr. Sena.

When the police questioned Mr. Moore, he stated he had worked for Mr. Anthony Tarantino as a marihuana dealer, and Mr. Anthony Tarantino, sometime in September 1984, had assigned the defendant to watch and protect him, while he did his selling. Furthermore, Mr. Moore stated that, on November 9, 1984, which was a date he particularly remembered, since it was the day before his birthday, defendant told him that defendant had killed a man on Rosewood Avenue, as a result of receiving authorization from Mr. Anthony Tarantino, and defendant was to be rewarded for carrying out that assignment. At trial, Mr. Moore testified in pertinent part, "He [defendant] described the shooting that he did on Rosewood Avenue. He said he grabbed * * * the victim by the arm, [and with] a large caliber pistol * * * shot [the victim] in the face". Also, Mr. Moore testified at trial that, subsequent to his conversation with the defendant about the murder, he overheard "Mr. [Anthony] Tarantino [tell defendant] * * * 'don't mention Rosewood to anybody, nobody [is] supposed to know about this' ".

Mr. Moore has been arrested four times, and has been convicted of possession of marihuana and reckless endangerment of a minor.

Our examination of the record indicates that the reason Mr. Moore provided the police with information was to try and prevent Mr. Tarantino from killing him. According to Mr. Moore, Mr. Anthony Tarantino had choked him into unconsciousness, and then had threatened to kill him, over a $200 debt Mr. Anthony Tarantino claimed Mr. Moore owed him. In his trial testimony, Mr. Moore stated that the police gave him a total of $200 for the information.

On February 5, 1985, pursuant to a search warrant, the police searched Mr. Anthony Tarantino's apartment, and, *inter alia,* found two items which appeared to be relevant to the murder of Mr. Sena.

The first item was a letter from defendant to Mr. Carmine Tarantino, who was Mr. Anthony Tarantino's brother. During the trial, this letter was admitted into evidence, pursuant to a

stipulation by which the defense conceded defendant had written it. In pertinent part, defendant wrote:

"Carmine * * *

"When I left N.Y.C. I returned to Norfolk[, Virginia] to stay with some friends and take care of this warrant I found here.

"However, the first time I went to court I was picked up by Norfolk detectives for a warrant that New York has on me for second-degree murder * * *

"Please tell your brother [Mr. Anthony Tarantino] where I am and what happened. I am sitting here in jail, facing extradition to New York. I don't know what has happened there so please tell me in a letter what Anthony wants me to do, fight the extradition and stay here for a while or sign the papers and come on up to the City.

"Either way, you and Anthony should know I'll keep my mouth shot [sic], regardless of what happens".

The second item was a bankbook of Ms. Christine Sena, who, a detective testified at trial, was "the wife of Phillip Sena, who was murdered".

By indictment, dated February 11, 1985, a Bronx County Grand Jury accused defendant of slaying Mr. Sena, and alleged, in that connection, that defendant had committed the crimes of murder in the second degree (Penal Law § 125.25), criminal possession of a weapon in the second degree (Penal Law § 265.03), and criminal use of a firearm in the second degree (Penal Law § 265.08).

Following indictment, and defendant's return to New York City from Norfolk, Virginia, as a result of extradition proceedings, the instant trial commenced in June 1986.

At this trial, in substance, Mr. Moore was the principal witness for the People against defendant, and his testimony was corroborated by such evidence as the large caliber bullet, mentioned *supra,* which had been recovered from the victim's body, and the letter discussed and quoted *supra,* written by defendant to Mr. Carmine Tarantino. While the defendant did not testify, he did present a defense, which consisted solely of a photograph, and a statement made by Mr. Moore to the police.

Subsequently, the jury found defendant guilty of the crime of murder in the second degree.

On appeal, the defendant does not challenge either the weight or sufficiency of the evidence against him. However, the defendant does contend that the trial court committed

reversible error in denying his trial counsel's request, pursuant to *Brady v Maryland* (373 US 83 [1963]), for documentary material in the possession of the police concerning their relationship with Mr. Moore; and the trial court denied him the effective assistance of counsel, by barring his trial counsel from discussing on summation certain aspects of the prosecution case. Furthermore, defendant contends his sentence was excessive, and improperly included a surcharge. After reviewing the record, we find defendant's three points to be without merit.

Our dissenting colleague contends that the determination of this appeal should be held in abeyance, and the matter remanded to determine whether *Rosario* material was withheld from the defense.

Since the defendant has not argued, at either the trial level or before us, that he was denied *Rosario* material, we find no justification to remand for a *Rosario* hearing.

As mentioned, *supra,* the defendant did raise a *Brady* issue.

The standards used to determine whether a *Brady* or a *Rosario* violation has occurred are different, since "*Brady* * * * involves a constitutional principle [while] the *Rosario* rule is based upon 'policy considerations' and 'a right sense of justice' *(People v Rosario* [9 NY2d 286, 289 (1961), *cert denied* 368 US 866 (1961)] * * * not constitutional mandates or guarantees" *(People v Howard,* 127 AD2d 109, 117 [1st Dept 1987]).

In *Brady (supra,* at 87) the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment". Thereafter, the United States Supreme Court in *United States v Bagley* (473 US 667 [1985]) expanded the *Brady* principle "to require the prosecution to deliver, not only exculpatory matter, but also material evidence which impeaches the credibility of a prosecution witness" *(People v Howard, supra,* at 113).

The theory of the defense "was that Moore had fabricated his story". Therefore, defense trial counsel contended that, in order to impeach Mr. Moore's credibility "by showing [his] bias or interest" *(United States v Bagley, supra,* at 676), he needed a certain DD-5 and the police investigative files concerning Mr. Moore. Based upon our examination of the record, we find that, even without the sought-after documents, significant evidence of Mr. Moore's "interest" was before the jury for consideration in evaluating his credibility. This evidence

consisted of such testimony, as mentioned *supra,* of Mr. Moore that he was a paid police informant, and the reason he provided the police with information was to try and prevent Mr. Anthony Tarantino from killing him. In addition, the jury had before it evidence indicating that Mr. Moore was a drug dealer, with a record of arrests and convictions.

In view of the evidence, which we discussed *supra,* concerning Mr. Moore's "interest" and character, we find that, even if the requested documents had been produced, they would not have changed "the result of the [trial]" *(United States v Bagley, supra,* at 684).

Furthermore, we find that defense trial counsel made an insufficient showing to entitle him to these documents, since he did not convincingly indicate that they contained information that would have added anything of significance to the evidence already before the jury relating to Mr. Moore's "interest". Concur—Sullivan, Ross and Asch, JJ.

Murphy, P. J., and Smith, J., dissent in a memorandum by Murphy, P. J., as follows: I dissent and would hold the appeal in abeyance pending a determination on remand whether *Rosario* material was withheld from the defense. On the record before us, it cannot be determined whether defense counsel's application during the trial for production of the police investigative files with respect to the confidential informant who was the prosecution's principal witness was properly denied. Therefore, a hearing should be held at which the requested documents are produced and evaluated.

The underlying facts are accurately set forth in the majority opinion, and are drawn substantially from the testimony of the paid police informant, Gerald Moore. During the trial, prior to Mr. Moore's testimony, counsel for defendant Simonds presented the prosecution with a partially redacted DD-5 police investigative report which he stated that he had received from the attorney for Anthony Tarantino, Moore's alleged former employer, in a separate criminal proceeding. This DD-5 had allegedly been produced to Tarantino's attorney by the prosecution. It showed that an informant by the name of Gerald had provided information against Mr. Tarantino in that investigation, but the last name of the informant had been redacted. Counsel for defendant Simonds requested production of an unredacted copy of this DD-5 from the prosecutor for use in cross-examining Moore, and requested that he be advised whether the informant identified in the DD-5 was in fact Gerald Moore. Defense counsel further

requested that he be provided with the entire police file with respect to Gerald Moore's informant activities. The prosecutor refused to comply with defense counsel's request for production. The Trial Judge inquired as to the legal basis of defense counsel's application for production, and recessed the proceeding, directing defense counsel to "bring me some law." Counsel, upon returning from the library, informed the court that the application was made pursuant to *People v Cleary* (33 AD2d 814). The prosecutor vigorously opposed the application, stating that the DD-5 did not relate to the homicide and that "my information is that Mr. Moore is not the informant that is mentioned in the paperwork provided by Mr. Tarantino's attorney." Based on the prosecutor's statement, the court then denied defense counsel's application for production of an unredacted copy of the DD-5 investigative report concerning Anthony Tarantino, without conducting an in camera examination of the requested document *(see, People v Poole,* 48 NY2d 144), and also denied the defense's request for production of the entire police files with respect to informant activities by Gerald Moore.

In my view, defendant made a sufficient good-faith showing to warrant production of the requested DD-5 investigative report and the entire police files with respect to the informant, Gerald Moore. *Brady v Maryland* (373 US 83) and *People v Savvides* (1 NY2d 554) support the request for production. *(See also,* CPL 240.45 [1] [a].) If the requested DD-5 does in fact contain information provided by Gerald Moore, then it would constitute *Rosario* material. *(See, People v Gilligan,* 39 NY2d 769; *People v Rosario,* 9 NY2d 286.) To support a specific request for production of *Brady* material, defense counsel need only demonstrate "some basis." *(People v Andre W.,* 44 NY2d 179, 184 [1978].) With respect to *Rosario* as well as *Brady* material, it is the duty of the prosecutor "scrupulously to discharge their obligations to make available to defense counsel material required to be disclosed" *(People v Gonzalez,* 74 AD2d 763, 765). Under the circumstances, given the fact that Anthony Tarantino was a target of several investigations and that the informant in at least two cases had the same first name, fit the same physical description, i.e., black male, approximately 25 years of age, and had the same number of criminal convictions, defense counsel's request had a reasonable basis. It was not a mere shot in the dark looking for possible weaknesses in the prosecution's case. *(See, People v Goggins,* 34 NY2d 163.) Moreover, the police testimony provided circumstantial support for an inference that Gerald .

Moore had been a confidential police informant in other investigations involving Anthony Tarantino. Tarantino was a target of other investigations into arson and weapons offenses. Detective Rodriquez, who was in charge of the homicide investigation, testified that Gerald Moore was referred to him by Detective Sheehan, who was working on the arson investigation. Detective Sheehan testified that Moore was in turn referred to him by another member of the police force. Thus, the record contains a sufficient factual basis to entitle the defense to production of the entire police file with respect to informant activities by Gerald Moore for use in cross-examination. That the requested material involved a separate investigation is of no moment, for the District Attorney's office must be viewed as one entity. *(See, Santobello v New York,* 404 US 257, 262; *People v Schulz,* 67 NY2d 144, 151.)

Gerald Moore testified about his relationship with Anthony Tarantino and his police informant activities with respect to Mr. Tarantino. Therefore, the DD-5 investigative report, assuming that "Gerald" is Gerald Moore, "relates to the subject matter of the witness's testimony". (CPL 240.45 [1] [a].) It is not for the court to excuse failure to produce *Rosario* material on the ground that it would be of little or no impeachment value on cross-examination; that is a decision for defense counsel alone. *(See, People v Consolazio,* 40 NY2d 446; *People v Malinsky,* 15 NY2d 86.)

The majority's analysis assumes that defendant's application involved only production of materials required to be disclosed under *Brady v Maryland* (373 US 83, *supra).* That conclusion is not supported by the record. The application during trial was for disclosure of materials to be used in cross-examination. While it is true that counsel formally cited neither *Brady* nor *Rosario (supra),* both the court and the prosecutor should have realized the importance of and grounds for the application and been aware of the risk of reversal attendant to noncompliance. That counsel did not specifically cite *Rosario* or *Brady* is inconsequential, especially in light of the mandate of CPL 240.45 (1) (a), which is the codification of the *Rosario* rule. *(See, People v Jones,* 70 NY2d 547, 549, n 1.) When the prosecutor balked at producing the DD-5, the court should have directed that it be produced for in camera inspection to determine whether it contained *Rosario* material. *(People v Poole, supra; People v Phillips,* 92 AD2d 738.)

Until the documents are produced and examined, it cannot fairly be determined whether *Rosario* material or *Brady* mate-

rial is present. Thus, the majority is premature in conducting a harmless error analysis, inasmuch as such analysis is inapplicable to cases where there has been a total failure to turn over *Rosario* materials. *(See, People v Jones, supra.)*

On remand, the court should ascertain what files do in fact exist and examine the files prior to production to insure that no ongoing investigation is prejudiced. If it is determined on remand that the Gerald named in the requested DD-5 investigative report is not in fact Gerald Moore, and that no police files with respect to Gerald Moore that were withheld contain *Rosario* material, the remaining issues on this appeal should then be determined. If, however, the informant identified is the same person as Gerald Moore, or the police files do contain *Rosario* material improperly withheld from the defense, then the failure to produce the requested documents to the defense for impeachment purposes on cross-examination constitutes a per se violation of due process and a new trial must be ordered. *(See, People v Ranghelle,* 69 NY2d 56; *People v De Jesus,* 69 NY2d 855.)*

Accordingly, the appeal from the judgment of the Supreme Court, Bronx County (I. Warner, J.), rendered on July 1, 1986, should be held in abeyance, and the matter remanded for a hearing to determine whether *Rosario* material was improperly withheld from the defense.