OPINION OF THE COURT
Albert Tomei, J.
The defendant Kayson Pearson has issued a subpoena to American Broadcasting Companies Inc. (ABC) for certain outtakes[1] of a TV show regarding the instant crimes. The outtakes are alleged to contain statements of four witnesses that will be called by the government on their direct case. ABC has moved to quash the subpoena.
The defendant Troy Hendrix has issued a subpoena to David Schisgall, Swinging T. Productions (STP), for all materials written or recorded of any interview with the complainant SB.[2] STP has moved to quash the subpoena.
After oral argument, the court granted the motions to quash the subpoenas. This decision explains the court’s reasoning.
Background ABC Outtakes
During the year 1993, ABC was granted permission by the New York City Police Department to observe and film the workings of the New York City Police Department. ABC was preparing for a reality show about the New York City Police Department ultimately titled “NYPD 24/7.”
Among the numerous stories that ABC was following was the homicide of Ramona Moore, one of the victims in this case. ABC followed and filmed the investigators in this case while the police tried to solve the crime. A break came when a person named Raymondo Jack gave certain information to the police. Additionally, the police were able to connect the murder of Ms. Moore to an alleged rape/kidnapping of SB. As a result of all the information gathered, the defendant Pearson was arrested.
On July 13, 2004, an episode of NYPD 24/7 was aired containing taped interviews with the detectives in charge, the family of Ms. Moore, SB and Jack.
The defendant Pearson wishes to have all the unused film from the program to see if any of the witnesses will, while *449 testifying for the People, contradict anything that the witness stated on the unused film. He seeks the outtakes for possible impeachment material. The defendant Pearson can neither identify any inconsistent statement nor identify a single piece of outtake that he will introduce into evidence during the trial or other proceeding.
ABC claims that the outtakes are covered as nonconfidential privileged material under Civil Rights Law § 79-h. ABC states that the defendant has failed to establish the three-prong test outlined by the statute and therefore cannot subpoena the material.
The defendant admits that he cannot prove the three requirements of Civil Rights Law § 79-h, but alleges that Civil Rights Law § 79-h violates a number of his constitutional rights. He argues that Civil Rights Law § 79-h violates the Constitution to the degree that it prohibits him from obtaining material to which he is constitutionally entitled.
As a subsidiary issue, the defendant Pearson alleges that ABC was an agent of law enforcement and thus, not covered by the media privilege created in Civil Rights Law § 79-h.
Initially, the court finds that ABC did not supply any information regarding the homicide and rape/kidnapping to the police. ABC only filmed what occurred during the investigation and interviewed certain persons. ABC has not supplied law enforcement agents with any of the tapes that were not aired on the program and would claim the media privilege should the government request the outtakes.
The court finds, as a matter of fact, that ABC is not a governmental agent and is covered by the Civil Rights Law § 79-h privilege.
Background STP
STP is an independent production company that produces documentaries used by various cable television stations. STP decided that it would produce a documentary about sexual exploitation of female minors. As part of the potential documentary, STP investigated minor prostitutes and females who enrolled in the Rachel Lloyd’s Girls Educational Mentoring Service (GEMS). GEMS is a program which attempts to mainstream former prostitutes.
STP went to GEMS and interviewed various females who were attempting to escape the life of prostitution. Each person *450 interviewed was promised that their interview would not be disclosed without the consent of the interviewee. One of the persons interviewed was SB. No documentary has yet been produced or aired.
The defendant Hendrix seeks the tape of the interview of SB for the potential use as impeachment material should SB testify contrary to any of her statements made to STE
STP moves to quash the subpoena on the ground of the privilege contained in Civil Rights Law § 79-h. STP claims that the material is covered by the absolute privilege in Civil Rights Law § 79-h for confidential matters.
The defendant Hendrix admits that he cannot establish the three-prong test contained in Civil Rights Law § 79-h for non-confidential matters let alone any test for confidential material, but alleges that Civil Rights Law § 79-h violates his constitutional rights.
As a subsidiary issue, the defendant Hendrix alleges that STP is not a covered entity under Civil Rights Law § 79-h.
The court finds that STP and David Schisgall are “news agency” and “professional journalist,” respectively, within Civil Rights Law § 79-h (a) (3) and (a) (6). Further, the court finds that the subject matter constitutes “news” as defined in Civil Rights Law § 79-h (a) (8).
Both defendants allege that Civil Rights Law § 79-h is unconstitutional because it deprives them of their constitutional rights. Neither defendant has been able to identify the exact constitutional right that the statute impinges. Both defendants make the generalized claim that the statute violates due process of law, the right to confront or cross-examine witnesses or the Compulsory Process Clause of the Constitution.
Because the court found that the defendants did not have a constitutional right to the material, the court did not decide the constitutionality of the statute.
It is important to recognize that neither defendant alleges that the subpoenaed documents contain any evidence that they seek to introduce during any of the proceedings. The only argument made is that they wish to examine the material to see if it contains any inconsistent statements. In effect, although couched in broader terms, they argue that they have a constitutional right to discover material in the hands of a nongovern *451 mental nonparty civilian witness.[3] Indeed, the defendants do not know what is contained in the materials and do not know whether there is evidence in existence. They are involved in the proverbial “fishing expedition.”
Discovery
There is no federal or state constitutional or common-law right to discovery.[4] The New York Legislature has taken into account values “premised on constitutional rights and fundamental fairness,” and adopted article 240 of the Criminal Procedure Law which, by specifying exactly what is discoverable prior to a criminal trial, essentially excludes from discovery items not mentioned and situations not enumerated.[5]
Since there is no constitutional right to discovery in criminal cases, courts cannot grant discovery where no statutory basis exists.[6] Thus, discovery in criminal proceedings is entirely governed by statute.[7]
As indicated above, there is no constitutional right to discover the existence of potential evidence or for that matter potential impeachment material. Therefore, to the degree that the defendants’ claims are predicated on an alleged constitutional right to discovery, the claim lacks merit.
It is also important to note that CPL article 240 does not contain any provision for discovery from persons who are not governmental agents. As such, the court lacks authority to grant such a right.
Right to Prior Statements of a Witness
In Jencks v United States,[8] the United States Supreme Court held that a federal defendant is entitled to see all prior state- *452 merits of any government witness in the possession of the federal government after such witness testifies on direct examination. Subsequently, the United States Supreme Court ruled that this right is not of constitutional magnitude but was instituted under the administrative authority of the Court over federal courts.[9]
As a result of the Jencks case, the Court of Appeals also held that a defendant is entitled to any prior statement in the possession of law enforcement agents of a People’s witness after such witness testifies on direct.[10] Subsequently, the Court of Appeals ruled that this rule is not of constitutional magnitude but a matter of federal evidentiary rules.[11]
Thus, neither the federal nor the state constitution mandate that the government turn over prior witness statements.[12] If this is true about witness statements in the possession of the government, it is, a fortiori, true of witness statements in the possession of civilian nonparty individuals.
Thus, the court ruled that there is no due process right to prior witness statements in the custody of the news media.
Compulsory Process
The Sixth Amendment to the United States Constitution, as is relevant to this discussion, provides “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor.” (Emphasis added.) Since 1807, the word “witness” for the purposes of the Compulsory Process Clause has been held to include documents.[13] Thus, the word witness in the Sixth Amendment means “a giver of evidence”[14] or to “bear testimony.”[15] The Compulsory Process Clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment.[16]
*453 However, the Compulsory Process Clause “provides no greater protections in this area than those afforded by due process.”[17] As indicated above, the Due Process Clause does not provide a right to a defendant to obtain a prior inconsistent statement of a governmental witness.
Further, the defendants do not seek the outtakes or the documents as “givers of evidence,” but seek to discover whether the material contains inconsistent statements of a prosecution witness. In this vein, it is noted that the defendants have not shown that the “witness” would be favorable to their case.
Additionally, in order to establish a compulsory process violation, a defendant must show that the government prevented him from producing “relevant and material, and . . . vital” evidence.[18] A showing that both of the defendants concede that they are unable to make.
The court concluded that the defendants had not established a compulsory process right to compel a nongovernmental agency to turn over prior witness statements.
Confrontation/Cross-Examination
The Sixth Amendment also provides, “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” This provision includes the right of an “opportunity” to cross-examine witnesses but does not provide for a right to an effective cross-examination.[19] Once a witness “is placed on the stand, under oath, and responds willingly to questions,” the right to cross-examine witnesses is satisfied.[20] The right to confrontation is applicable to the states by incorporation through the Due Process Clause of the Fourteenth Amendment.[21]
While it would be convenient for defense counsel to possess a witness’ prior inconsistent statements and would make the cross-examination more effective, nothing in the confrontation clause grants a defendant the right to involuntarily obtain such documents from civilian entities.
The court ruled that the defendant had failed to establish a confrontation right to the subpoenaed material.

*454
Brady

While not specifically argued by either defendant, the court considered whether there is a right to this material under Brady v Maryland[22]
The State has a duty to disclose exculpatory evidence in its possession which is material to the guilt or innocence of the defendant.[23] “There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.”[24]
Under the first component of Brady, evidence is exculpatory if it has “a direct bearing on the issue of the defendant’s guilt or innocence.”[25] Under the second component of Brady, evidence is not suppressed if the defendant knew or should have reasonably known of the evidence and its exculpatory nature.[26]
However, the defendants have failed to show that the material is in the possession of the government or that the material is exculpatory.
The court concluded that there would not be a Brady violation if the subpoenas were quashed.
The court also wishes to make clear that a subpoena is not to be used to discover potential evidence.[27]
Since the defendants had no constitutional right to the subpoenaed material and the defendants conceded that they could not establish the three-pronged test contained in Civil Rights Law § 79-h, the court granted the motions to quash the subpoenas.
The motions to quash the subpoenas are granted and the subpoenas are quashed.

. Outtakes are audio or videotapes that were not broadcast.

. Name withheld from this decision.

. The court uses the term witness in the same manner that the Compulsory Process Clause of the Constitution defines the term. This definition will be discussed later in the decision.

. Weatherford v Bursey, 429 US 545, 559 (1977); Gray v Netherland, 518 US 152, 168 (1996); People v Colavito, 87 NY2d 423, 426 (1996); Matter of Miller v Schwartz, 72 NY2d 869, 870 (1988); People ex rel. Lemon v Supreme Ct. of State of N.Y., 245 NY 24, 28 (1927).

. Colavito, 87 NY2d at 427.

. Matter of Briggs v Halloran, 12 AD3d 1016, 1017 (2004); Matter of Sachet v Bartlett, 241 AD2d 97, 101 (1998); Matter of Pirro v LaCava, 230 AD2d 909, 910 (1996).

. People v Copicotto, 50 NY2d 222, 225 (1980); Matter of Hynes v Cirigliano, 180 AD2d 659 (1992).

. 353 US 657 (1957).

. United States v Augenblick, 393 US 348, 356 (1969).

. People v Rosario, 9 NY2d 286 (1961).

. People v Jackson, 78 NY2d 638, 644 (1991).

. See People v Simonds, 140 AD2d 236, 239 (1988), affd 73 NY2d 945 (1989); People v Beal, 57 AD2d 306, 309 (1977).

. United States v Burr, 25 F Cas 30 (1807, Marshall, Ch. J.).

. United States v Hubbell, 530 US 27, 50 (2000, Thomas, J., concurring).

. Crawford v Washington, 541 US 36, 51 (2004).

. Washington v Texas, 388 US 14 (1967).

. Pennsylvania v Ritchie, 480 US 39, 56 (1987).

. United States v Valenzuela-Bernal, 458 US 858, 867 (1982).

. Delaware v Fensterer, 474 US 15, 19-20 (1985).

. United States v Owens, 484 US 554, 561-562 (1988); see Crawford, 541 US 36 (2004) (historical analysis of the meaning of the Confrontation Clause).

. Pointer v Texas, 380 US 400 (1965).

. 373 US 83 (1963).

. Id.; People v Vilardi, 76 NY2d 67, 73 (1990).

. Strickler v Greene, 527 US 263, 281-282 (1999); People v LaValle, 3 NY3d 88, 110 (2004).

. People v Battease, 3 AD3d 601, 603 (2004).

. LaValle, 3 NY3d at 110; People v Doshi, 93 NY2d 499, 506 (1999); Spirko v Mitchell, 368 F3d 603, 610 (2004); United States v Jackson, 345 F3d 59, 73 (2003).

. Matter of Terry D., 81 NY2d 1042, 1043-1044 (1993).