OPINION OF THE COURT
Mark Dwyer, J.
Defendant Angelo Diaz stands charged with a number of felonies, including attempted murder in the second degree, on the theory that he was an accomplice in an attempt to shoot a police officer. The People intend to prove at trial that defendant shouted, in so many words, “shoot the cop,” as his codefendant, Angel Rivera, struggled with an officer for control of a pistol. However, the Daily News published an article just after the crime stating that, “according to authorities,” the codefendant’s mother had shouted “shoot the cop.”
Defendant has served a subpoena on the Daily News in an effort to determine whether the source of the story’s report about the codefendant’s mother was one of the two officers present at the time of the crime. Those officers are expected to testify about the “shoot the cop” statement. If they attribute the statement to defendant, and if one of the officers was the source for the Daily News article, defendant would seek to impeach the witness with his prior statement. If necessary, defendant would call a Daily News witness to attest that the officer had attributed the “shoot the cop” statement to someone other than defendant.
The Daily News has moved to quash the subpoena on authority of New York’s Press Shield Law (Civil Rights Law § 79-h) and related constitutional doctrines. For the reasons that follow, the court will deny the motion of the Daily News and grant limited, but substantial, relief to defendant.
L
The People’s theory of the case is that two police officers discovered defendant, Angel Rivera, and a third man drinking in a public area inside 2220 West 11th Street in Brooklyn, and *321 sought to issue each of them a summons. Rivera resisted and displayed a weapon. He then struggled with one officer for control of that weapon. The second officer handcuffed defendant and the third man to a garbage chute, but when the magazine of Rivera’s weapon was kicked to defendant, defendant was able to drop it into the chute. According to the People, defendant then shouted “shoot the cop,” as Rivera continued to struggle with the first officer for control of the gun.
Defendant is charged as an accomplice for encouraging Rivera’s attack on the first police officer. Central to the case against defendant is the assertion that he shouted “shoot the cop.” (See Penal Law § 20.00.) The Daily News article attributing that statement to Rivera’s mother therefore touches on a subject very obviously material to the charges against defendant.
Defendant quite understandably wants to know the identity of the “authorities” who supposedly reported that the codefendant’s mother shouted “shoot the cop.” He has submitted a subpoena to the Daily News seeking that information. The Daily News, also quite understandably, seeks to quash the subpoena on the ground that the source is a confidential informant. The Daily News argues that the identity of the informant is protected from disclosure by New York’s Press Shield Law (Civil Rights Law § 79-h) and by both the State Constitution and the Federal Constitution.
Defendant does not dispute that the source of the Daily News article is a “confidential” source. But he asserts that his Sixth Amendment right to confront prosecution witnesses trumps the Press Shield Law and entitles him to know the source of the Daily News report. Notably, defendant has limited his request. He seeks to learn the identity of the source of the Daily News report only if it is one of the two officers who were present at the time of the alleged crime.*
IL
The Daily News asserts that, under state law, the identity of a confidential source is absolutely protected from disclosure. The Daily News is correct. The Court of Appeals has held that the identity of a confidential source is protected from disclosure by statute. (Matter of Beach v Shanley, 62 NY2d 241 [1984].)
*322 The Daily News also suggests that the information is constitutionally protected. That view is subject to criticism. The definitive statement by the United States Supreme Court in the area came in Branzburg v Hayes (408 US 665 [1972]). The five Justices in the majority agreed that a press representative was not entitled to resist a grand jury subpoena on a First Amendment theory. Justice Powell, one of the five, added a concurring opinion suggesting that extreme instances of harassment of the press could yield a different result. (See id. at 709-710.) But no general First Amendment “press privilege” was established.
A number of subsequent decisions of the Federal Circuit Courts of Appeals misinterpreted Branzburg. Prominent among them was United States v Burke (700 F2d 70 [2d Cir 1983], cert denied 464 US 816 [1983]), which turned the Branzburg holding on its head. Burke concluded, based on an apparent conflation of the Branzburg concurring opinion and the dissenters’ views, that the First Amendment does provide a privilege to the press, and that the privilege protects the identities of confidential sources. Cases since Burke have acknowledged that Burke was mistaken. In particular, the Second Circuit itself has renounced Burke as a case that simply misunderstands what the Supreme Court held in Branzburg. (See United States v Cutler, 6 F3d 67 [2d Cir 1993]; see also United States v King, 194 FRD 569 [ED Va 2000].)
But that is of little import here. Citing the State Constitution, the Court of Appeals seems to have followed the same path as the Burke court. (O’Neill v Oakgrove Constr., 71 NY2d 521 [1988].) In O’Neill the Court determined that information obtained by the press, including the identity of confidential sources, is generally not subject to subpoena.
More importantly and as noted, the New York Legislature agreed with the position of the Daily News. The Legislature enacted the statute now codified at Civil Rights Law § 79-h, and mooted any possible issues about the constitutional law conclusions of the Court of Appeals. Under section 79-h, the identities of confidential press sources are absolutely protected, as is other confidential information. Nonconfidential information is also protected from disclosure unless a party shows that the information (1) is highly material, (2) is critical to the party’s claim, and (3) is not otherwise available.
It follows that the position of the Daily News is correct, as a matter of state law. Even if there were no constitutional basis for the position of the Daily News, the Press Shield Law *323 prevents defendant from obliging the Daily News to identify a confidential source. And of course, New York is entitled to extend protections to the press, by statute, beyond those provided by the Federal and State Constitutions.
Ill
If the subpoena at issue were a prosecution subpoena, that would end the analysis. But the subpoena is a defense subpoena. Defendant insists that his rights under the Confrontation Clause of the Sixth Amendment and under the Due Process Clause of the Fourteenth Amendment trump the statutory and constitutional privileges of the Daily News. Under the facts of this case, this court agrees.
A defendant’s Sixth Amendment rights to confront witnesses and present a defense are generally subject to rules of privilege and to other evidentiary restrictions. A defendant generally could not, for example, insist on presenting testimony about a codefendant’s privileged communications with that codefendant’s attorney. Nor could he expect to elicit declarations in violation of the rules against hearsay. But under some extreme circumstances, rules of evidence must be subordinated to a defendant’s due process right to a fair trial. The lead case is Chambers v Mississippi (410 US 284 [1973]). There the Supreme Court ordered a new trial because a confluence of state evidence rules had wrongly prevented the defendant from eliciting reliable proof that someone else committed the crime with which the defendant was charged.
Applying the Chambers rationale, any number of state and federal decisions have concluded that the interests of the press protected by constitutional and statutory privileges may have to give way when weighed against a criminal defendant’s claim that protected information is vital to his defense. (See e.g. United States v Criden, 633 F2d 346 [3d Cir 1980]; People v Le Grand, 67 AD2d 446 [2d Dept 1979, Titone, J.]; People v Nasser, 15 Misc 3d 499 [Sup Ct, Westchester County 2007] [prior inconsistent statements]; Matter of Sullivan, 167 Misc 2d 534 [Sup Ct, Queens County 1995]; People v Troiano, 127 Misc 2d 738, 741-742 [County Ct, Suffolk County 1985].) In a typical case, the balancing process will yield a result upholding the press privilege. (See e.g. Matter of Perito v Finklestein, 51 AD3d 674 [2d Dept 2008]; People v Hendrix, 12 Misc 3d 447 [Sup Ct, Kings County 2006]; People v Troiano; People v Iannaccone, 112 Misc 2d 1057 [Sup Ct, NY County 1982]; People v Marahan, 81 Misc *324 2d 637 [Sup Ct, Kings County 1975].) But on occasion, the facts result in a conclusion that the interests of the defendant outweigh those of the press. (See e.g. People v Nasser; Matter of Sullivan.)
The rule may be stated this way: where a criminal defendant seeks press information that (1) is highly material, (2) is critical to the defendant’s claim, and (3) is not otherwise available, then the press privilege must give way in the face of the Sixth Amendment. And that is true even if the information is confidential. Notably, that test is consistent with the rule announced in O’Neill defining press protections under the New York Constitution. And of course the test is the one applicable under the Press Shield Law when any party in any case, civil or criminal, seeks nonconfidential press information. Constitutional requirements dictate that this standard be applied as well when a defendant in a criminal case seeks confidential information, even though in that circumstance the Press Shield Law would absolutely bar a subpoena.

m

The facts here present a textbook example of circumstances requiring that the press privilege be overridden. The identity of the individual (or individuals) who said “shoot the cop” is highly material to whether defendant was an accomplice in the attack on the police officer. Defendant’s claim that someone else made the statement is critical to his defense. And there is no available source for crucial information other than the Daily News. Defendant seeks to impeach expected police testimony that he uttered the words at issue. If one of the officers who was at the scene of the crime attributed the statement to Rivera’s mother in an interview, and thus is subject to impeachment with a prior inconsistent statement, only a representative of the Daily News can so indicate.
Other factors plainly show that a proper balancing of interests tilts toward defendant’s position. Most important is that, as noted, the People’s claim that defendant was an accomplice in serious crimes is almost completely dependent on the statement at issue. Next, any required disclosure will be narrow: only the source of a statement is at issue, not substantive information. Belatedly, if there will be disclosure of a confidential source, that disclosure will be only of someone who will otherwise be testifying, and who will have no legitimate interest in hiding prior inconsistent statements. This is certainly not a case in *325 which disclosure will put an otherwise anonymous individual at risk or in which a whistle-blower has made a disclosure in the public interest. There is not even a reason to think that the source would face police discipline for his disclosure. The court presumes that stones will be cast at the informant only by any supervisors who might themselves be without sin.
Finally, the court’s relief will be narrow. Counsel for the Daily News need disclose to the court, in camera, only whether the confidential source is one of the two officers present at the crime scene and, if so, which of the two he is. The court will in turn disclose that information only if the source testifies, and denies that he made the statement published in the Daily News. Of course, if the named source denies making the statement, an appropriate witness from the Daily News will be obliged to testify on the defense case.
The motion of the Daily News to quash the subpoena is denied. The Daily News will disclose to the court in camera whether the source of the relevant information was one of the two officers at the crime scene. If so, the subpoena will require an appearance by a witness from the Daily News under the circumstances indicated above.

 The court offered the Daily News an opportunity to end this litigation by stating that the source of the report was not one of the two officers present at the time of the incident. The Daily News declined to accept the invitation, but in doing so did not indicate anything about whom the source might be.